BILAL ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KENNETH R. CARBAJAL (Cal. Bar No. 338079)
Assistant United States Attorney
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3172
    Facsimile: (213) 894-0141
    E-mail: kenneth.carbajal@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ERNESTO ECHEVERRIA, et al.,<br><br>    Defendants. | No. 2:23-cr-00236-ODW-2<br><br>PLEA AGREEMENT FOR DEFENDANT OSCAR BARRIENTOS |

    1.    This constitutes the plea agreement between OSCAR BARRIENTOS ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count seven of the indictment in United States v. OSCAR BARRIENTOS, et al., No. 2:23-cr-00236-ODW-2, which charges defendant with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A)(viii); count 12, which charges defendant with conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371; and count 21, which charges defendant with being a felon and prohibited person in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1).

      b.    Not contest facts agreed to in this agreement.

      c.    Abide by all agreements regarding sentencing contained in this agreement.

      d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

## THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

      a.    Not contest facts agreed to in this agreement.

      b.    Abide by all agreements regarding sentencing contained in this agreement.

      c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSES

4. Defendant understands that for defendant to be guilty of the crime charged in count seven, that is, distribution of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), the following must be true: (1) defendant knowingly distributed methamphetamine, and (2) defendant knew that it was methamphetamine or some other federal controlled substance.

5. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant distributed at least 50 grams of methamphetamine, as alleged in count seven of the indictment.  Defendant admits that defendant, in fact, distributed at least 50 grams of methamphetamine, as alleged in count seven of the indictment.

6. Defendant understands that for defendant to be guilty of the crime charged in count 12, that is, conspiracy to engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 371, the following must be true:

a. Beginning on or before July 26, 2022, and continuing to on or about May 2, 2023, there was an agreement between two or more persons to engage in the business of dealing firearms without a license, as charged in the indictment;

b. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

7. Defendant understands that for a person to be found guilty of engaging in the business of dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A), which is the object of the conspiracy charged in count 12 of the indictment, the following must be true: (1) the person was willfully engaged in the business of dealing in firearms within the dates specified in the indictment, and (2) the person did not then have a license as a firearms dealer.

8. Defendant understands that for defendant to be guilty of the crime charged in count 21, that is, felon and prohibited person in possession of firearms and ammunition, in violation of Title 18, United States Code, Section 922(g)(1), the following must be true: (i) defendant knowingly possessed a firearm or ammunition; (ii) the firearm or ammunition had been shipped or transported from one state to another or between a foreign nation and the United States; (iii) at the time the defendant possessed the firearm or ammunition, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (iv) at the time that defendant possessed the firearm or ammunition, defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

## **PENALTIES**

9. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), is: life imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21 United States Code, Sections 841(a)(1), (b)(1)(A), is: 10 years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: 5 years'

imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 922(g)(1), is: 15 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: life imprisonment; a lifetime period of supervised release; a fine of $10,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

14. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

15. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

16. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that

the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

17. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

18. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 20 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On October 20, 2022, in Los Angeles County, within the Central District of California, defendant knowingly and intentionally sold and distributed approximately

1,262 grams of actual methamphetamine to an individual he believed was a drugs and firearms customer, but who was, in fact, a confidential informant ("CI") working at the direction of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Defendant sold this methamphetamine to the CI in exchange for $3,000, and at the time of the sale, defendant knew that the substance he distributed to the CI was methamphetamine.

Beginning no later than July 26, 2022 and continuing until at least May 2, 2023, in Los Angeles County, within the Central District of California and elsewhere, defendant, co-defendant, and other co-conspirators agreed to willfully engage in the business of dealing firearms without a license. Defendant joined in this agreement knowing of its object and intending to help accomplish it. During the course of the conspiracy, in eight separate transactions, defendant knowingly, intentionally, and willfully sold and distributed 15 firearms to the CI. In each of these transactions, co-defendant would offer to sell firearms and/or ammunition to the CI, and defendant would supply co-defendant with the firearms and/or ammunition to be sold and a location where the sales could occur. At all times during the conspiracy and at the time of each of these transactions: (1) defendant and co-defendant did not have a license to sell or distribute firearms; and (2) defendant knew that his conduct of selling and distributing firearms was unlawful.

On September 23, 2022, defendant and co-defendant sold two firearms and 240 rounds of ammunition to the CI. Specifically, on September 23, 2022, via text message and using coded language, co-defendant told the CI that co-defendant had firearms for sale and sent the CI defendant's address to meet for the transaction. That same day, co-defendant met with the CI at defendant's residence and introduced the CI to defendant. Co-defendant and defendant then sold the following firearms and ammunition to the CI for $3,000 at defendant's residence: a B.F.I. model XM15-E2S 5.56 caliber semi-automatic rifle and a 30-round magazine; a Polymer 80 9mm handgun, bearing no serial number (commonly referred to as a "ghost gun"); and 240 rounds of Poongsan Metals Corp. .223 caliber ammunition. The Poongsan Metals Corp. ammunition that defendant

possessed and sold to the CI were manufactured outside of California, and thus, before September 23, 2022, had been shipped or transported from one state to another.

On September 28, 2022, defendant and co-defendant sold one firearm to the CI. Specifically, between September 24, 2022 and September 28, 2022, via text message and phone calls and using coded language, co-defendant told the CI that co-defendant had a firearm for sale and arranged to meet at defendant's residence to conduct the transaction. On September 28, 2022, at his residence, defendant provided a firearm to the CI to inspect. That same day, co-defendant and defendant sold the following to the CI for $1,300 at defendant's residence: a Polymer80 PF940V2 9mm handgun, bearing no serial number; and a magazine.

On October 6, 2022, defendant and co-defendant sold two firearms to the CI. Specifically, on October 6, 2022, via text message and phone calls and using coded language, co-defendant told the CI that co-defendant had firearms for sale and that the firearms were at defendant's residence, and agreed to meet with the CI at defendant's residence to conduct the sale. That same day, co-defendant and defendant sold the following two firearms to the CI for $3,100 at defendant's residence: a Rock Island Armory model 1911A1 .45 caliber semi-automatic pistol, bearing serial number RIA2477693; a Glock model 22 Gen4 .40 caliber semi-automatic pistol, bearing serial number BCKV862; two .40 caliber magazines; and one 31-round 9mm magazine. Defendant knew that the Rock Island Armory model 1911A1 firearm was stolen. The Rock Island Armory model 1911A1 pistol and the Glock model 22 Gen4 pistol that defendant possessed and sold to the CI were manufactured outside of California, and thus, before October 6, 2022, had been shipped or transported from one state to another.

On October 11, 2022, defendant and co-defendant sold three firearms and 300 rounds of ammunition to the CI. Specifically, between October 7, 2022 and October 11, 2022, via text message and using coded language, co-defendant told the CI that co-defendant had firearms for sale and asked the CI to meet at defendant's residence to conduct the sale. That same day, co-defendant and defendant sold the following firearms

8

and ammunition to the CI for $6,150 at defendant's residence: an FN model Five-seven 5.7x28 caliber semi-automatic pistol, bearing serial number 386383859 with a 20-round magazine; a Smith & Wesson model M&P9 Shield 9mm caliber pistol, bearing serial number HYB5128; a Polymer80 PF940C 9mm semi-automatic pistol, bearing no serial number with a 33-round magazine; and 300 rounds of FN Herstal 5.7x28 caliber ammunition. The FN model Five-seven 5.7x28 caliber pistol, the Smith & Wesson model M&P9 Shield 9mm caliber pistol, and the FN Herstal ammunition that defendant possessed and sold to the CI were manufactured outside of California, and thus, before October 11, 2022, had been shipped or transported from one state to another.

On October 20, 2022, defendant and co-defendant sold two firearms and approximately 1,262 grams of actual methamphetamine to the CI. Specifically, between October 17, 2022 and October 20, 2022, via text message and using coded language, co-defendant told the CI that co-defendant had firearms and methamphetamine for sale. On October 20, 2022, co-defendant and defendant sold the following firearms and ammunition to the CI for $3,400 at defendant's residence: a Walther model MP Uzi .22 caliber rifle, bearing serial number W1022492; a .223 caliber privately manufactured short-barreled rifle, bearing no serial number; 22 rounds of Remington Ammunition .22 caliber ammunition; and 15 rounds of Lake City Army Ammunition Plant .223 caliber ammunition. That same day, defendant and co-defendant also sold approximately 1,262 grams of methamphetamine to the CI for $3,000 at defendant's residence. The Walther model MP Uzi .22 caliber rifle, the Remington ammunition, and the Lake City Army Ammunition Plant ammunition that defendant possessed and sold to the CI were manufactured outside of California, and thus, before October 20, 2022, had been shipped or transported from one state to another.

On October 27, 2022, defendant and co-defendant sold one firearm to the CI. Specifically, between October 21, 2022 and October 27, 2022, via text message and using coded language, co-defendant told the CI that co-defendant had a firearm for sale. On October 27, 2022, co-defendant and defendant sold the following firearm and

ammunition to the CI for $1,300 at defendant's residence: a Ruger model Ruger-57 5.7x28 caliber semi-automatic pistol, bearing serial number 64307104 with a 20-round magazine. The Ruger model Ruger-57 5.7x28 caliber pistol that defendant possessed and sold to the CI was manufactured outside of California, and thus, before October 27, 2022, had been shipped or transported from one state to another.

On November 16, 2022, defendant and co-defendant sold two firearms to the CI. Specifically, between November 8, 2022 and November 16, 2022, via text message and using coded language, co-defendant told the CI that he had firearms for sale. On November 16, 2022, co-defendant and defendant sold the following firearms to the CI for $4,200 at defendant's residence: a Rock Island Armory model 1911A1 .45 caliber semi-automatic pistol, bearing serial number RIA2477691 with a 28-round .45 caliber magazine drum; and an American Tactical Imports model Omni Hybrid multi-caliber semi-automatic pistol, bearing serial number NS263965 with a 30-round magazine. Defendant knew that the Rock Island Armory model 1911A1 firearm was stolen. The Rock Island Armory model 1911A1 .45 caliber pistol and the American Tactical Imports model Omni Hybrid multi-caliber pistol that defendant possessed and sold to the CI were manufactured outside of California, and thus, before November 16, 2022, had been shipped or transported from one state to another.

On March 13, 2023, defendant and co-defendant sold two firearms and four rounds of ammunition to the CI. Specifically, between March 8, 2023 and March 13, 2023, via text message and using coded language, co-defendant told the CI that co-defendant had firearms for sale. On March 13, 2023, defendant and co-defendant sold the following firearms and ammunition to the CI for $5,000 at defendant's residence: a Juggernaut Tactical model JT-9 9mm caliber short-barreled rifle, bearing no serial number with a 30-round magazine; a Zasatava Arms model M92PV 7.62x39mm caliber semi-automatic pistol, bearing serial number M92PV023571 with a 50-round magazine drum and a 30-round magazine; and four rounds of Prvi Partizan 7.62x39 caliber ammunition. The Zasatava Arms model M92PV 7.62x39mm caliber pistol and Prvi

Partizan ammunition that defendant possessed and sold to the CI were manufactured outside of California, and thus, before March 13, 2023, had been shipped or transported from one state to another.

Thus, in total, defendant conspired to sell and did sell 15 firearms, all while lacking a license to sell or distribute firearms. Defendant also distributed a total of approximately 1,262 grams of actual methamphetamine.

At the time defendant knowingly possessed the 15 firearms described above, defendant had previously been convicted of, and knew that he had previously been convicted of, the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Possession of a Controlled Substance, in violation of California Health & Safety Code Section 11350(a), in the Superior Court for the State of California, County of Los Angeles, Case No. BA292111, on or about October 31, 2005; and

(2) Grand Theft, in violation of California Penal Code Section 487(d)(1), in the Superior Court for the State of California, County of Los Angeles, Case No. GA064966, on or about March 23, 2006.

## **SENTENCING FACTORS**

19. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crimes of conviction.

20. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 34 | U.S.S.G. §§ 2D1.1(a)(5), (c)(3) |
| --- | --- | --- |
| [at least 500 G but less than 1.5 KG of methamphetamine (actual)] | | |
| | | |
| Possession of Firearm: | +2 | U.S.S.G. § 2D1.1(b)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

21. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

22. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

23. Defendant understands that by pleading guilty, defendant gives up the following rights:

   a. The right to persist in a plea of not guilty.

   b. The right to a speedy and public trial by jury.

   c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

   d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

24. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE; WAIVER OF COLLATERAL ATTACK

25. Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 35 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set

1 forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

27. The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 33 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## **RESULT OF WITHDRAWAL OF GUILTY PLEA**

28. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

29. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

32. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

33. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

34. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence,

16

and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 20 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

35. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

## **NO ADDITIONAL AGREEMENTS**

36. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

**PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING**

37. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

BILAL ESSAYLI
United States Attorney

_____     May 21, 2025
KENNETH R. CARBAJAL                 _____
Assistant United States Attorney    Date


x_____     5-14-25
OSCAR BARRIENTOS                    _____
Defendant                           Date


_____     05/20/2025
VITALY SIGAL                        _____
Attorney for Defendant OSCAR        Date
BARRIENTOS

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____   5-14-25
OSCAR BARRIENTOS                  Date
Defendant

**CERTIFICATION OF DEFENDANT'S ATTORNEY**

I am OSCAR BARRIENTOS's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_/s/ Vitaly B. Sigal_  05/20/2025
VITALY SIGAL                      Date
Attorney for Defendant OSCAR BARRIENTOS